CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
MAR 05 2012
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| KEVIN O. AHERN, | ) CASE NO. 5:11CV00070 |
| Plaintiff, | ) |
| v. | ) REPORT AND RECOMMENDATION |
| MICHAEL ASTRUE, Commissioner of Social Security, | ) |
| | ) By: B. Waugh Crigler |
| Defendant. | ) U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's July 24, 2007 applications for a period of disability, disability insurance benefits, and supplemental security income ("SSI") under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423 and 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned RECOMMENDS that an Order enter GRANTING the plaintiff's motion for summary judgment and REMANDING this case to the Commissioner for further proceedings.

In a decision issued on March 26, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since July 20, 2007, his alleged disability onset date, and that he remained insured through December 31, 2007[1]. (R. 18.) It was

---

[1] In order to qualify for disability insurance benefits, plaintiff must establish that he became disabled prior to the expiration of his insured status, December 31, 2007. See 20 C.F.R. § 404.131(a).

determined that plaintiff's degenerative disc disease of the cervical and lumbar spine was a severe impairment, but that he did not suffer an impairment or combination of impairments which met or medically equaled a listed impairment. (*Id.*, R. 20.) The Law Judge further determined that plaintiff possessed the residual functional capacity ("RFC") to perform a full range of sedentary work[2], but that he could not perform his past relevant work as an assembly worker or a manager at a restaurant. (R. 20, 25.) By application of Grid Rule 201.25[3] of the Medical-Vocational Guidelines ("grids")[4], the Law Judge concluded that plaintiff was not disabled. (R. 25.) Thus, the Law Judge ultimately found plaintiff was not disabled under the Act. (R. 26.)

Plaintiff appealed the Law Judge's March 26, 2010 decision to the Appeals Council. (R. 1-3.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1.) This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the plaintiff. *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The

---

[2] The regulations define sedentary work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[3] Grid Rule 201.25 provides that a person is disabled if he is limited to sedentary work, is a younger individual, has a limited or less education, and his past relevant work experience is skilled or semiskilled with skills which are not transferrable. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[4] The grids, located at 20 C.F.R. Part 404, Subpart P, Appendix 2, are tables "'that indicate the proper disability determinations for various combinations of age, education, and previous work experience in conjunction with the individual's residual functional capacity, *i.e.,* his maximum capacity for sustained performance of the physical and mental requirements of the job.'" *Christmas v. Astrue,* 2010 WL 1027492, *3 n. 4 (W.D.Va. March 17, 2010) (quoting *Hall v. Harris,* 658 F.2d 260, 265 (4th Cir. 1981)).

2

regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). However, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

In a brief filed in support of his motion for summary judgment, plaintiff initially argues that the Law Judge erred in finding that he had the RFC to perform sedentary work. (Pl's Brief, pp. 8-10.) Specifically, plaintiff contends that the Law Judge did not accord proper weight to the opinions offered by treating source David Rossi, D.O. (Pl's Brief, pp. 9-10.) The undersigned agrees.

Under the regulations and applicable circuit decisional authority, a Law Judge and the Commissioner must consider the following in evaluating and weighing medical opinions: "'(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.'" *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (quoting *Johnson v Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005)).

It is a well-established general principle that the evidence of a treating doctor should be accorded greater weight. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). Yet, when that physician's opinion is not supported by the objective medical evidence or is inconsistent with other substantial evidence, the Law Judge and Commissioner may give it "significantly less weight." *Craig*, 76 F.3d at 590. Moreover, where the evidence is such that reasonable minds could differ as to whether the claimant is disabled, the decision falls to the Law Judge, and ultimately to the

3

Commissioner, to resolve the inconsistencies in the evidence. *Johnson*, 434 F.3d at 653; *Craig*, 76 F.3d at 589.

As noted above, the Law Judge found that plaintiff's sole severe impairment was degenerative disc disease of the cervical and lumbar spine. (R. 18.) Plaintiff's primary treating source was Dr. Rossi, a physician with RMH East Rockingham Health Center. Dr. Rossi completed RFC questionnaire forms on September 26, 2008 and October 5, 2009, in which he expressed his view that plaintiff suffered work-preclusive limitations. (R. 364-368, 369-373.)

In assessing the value to accord Dr. Rossi's questionnaires, the Law Judge determined they were entitled to "little weight" for several reasons. (R. 24.) The first was that there were "only two medical visits with [Dr. Rossi] are given in the record." (*Id.*) This is not accurate. The record actually shows that plaintiff was seen by Dr. Rossi on all of the following dates: September 26, 2008 (R. 418), November 17, 2008 (R. 417), December 4, 2008 (R. 415), December 31, 2008 (R. 414), January 29, 2009 (R. 413), April 2, 2009 (R. 408), February 25, 2009 (R. 409), April 20, 2009 (R. 407), May 21, 2009 (R. 406), June 30, 2009 (R. 411), July 22, 2009 (R. 410), September 11, 2009 (R. 402), August 27, 2009 (R. 403), October 28, 2009 (R. 400), October 5, 2009 (R. 401), November 30, 2009 (R. 397), December 11, 2009 (R. 396), January 27, 2010 (R. 395), and February 22, 2010 (R. 390).

In addition to personally treating plaintiff on these dates, Dr. Rossi also referred plaintiff to Rockingham Memorial Hospital for numerous services during the course of his treatment. For instance, on December 3, 2007, plaintiff was referred for a CT of the lumbosacral spine post myelogram. (R. 427-428.) The CT revealed a diffusely bulging disc at L2-3. (R. 427.) On June 23, 2008, plaintiff had images of his lumbar spine taken in response to his complaints of low back

pain. (R. 429.) The imaging revealed posterior spurs encroaching on the central canal at the L5-S1 level. (*Id.*) On July 23, 2008, Dr. Rossi referred plaintiff for an MRI of the lumbar spine following his complaints of back pain and left leg pain with bilateral leg swelling. (R. 425-426.) Dr. Rossi referred plaintiff on August 5, 2008 for a whole body bone scan as a result of his complaints of low back pain. (R. 423.) The whole body scan revealed changes at the posterior aspect of the lower lumbar spine on the right that would correspond to facet joints likely at L4-5 and L5-S1 and increased activity at the upper portion of the sacrum likely representing the superior endplate of S1. (*Id.*) On January 29, 2009, Dr. Rossi referred plaintiff for imaging of the sacrum spine and coccyx. (R. 422.) The imaging revealed no fracture or focal abnormality. (*Id.*) Plaintiff was referred on January 29, 2009 for lumbar spine imaging in response to his complaints of low back pain and a recent injury. (*Id.*) The imaging revealed chronic changes in the lumbar spine that had been stable since June 23, 2008. (*Id.*) On May 22, 2009, plaintiff was sent for imaging services on his left great toe and left foot due to pain he was experiencing in these areas. (R. 421.) The left foot imaging revealed spurring of the calcaneus, but no other focal osseous abnormalities. (*Id.*) The left great toe imaging revealed no osseous or joint abnormalities. (*Id.*) Dr. Rossi referred plaintiff to Andrew Wagner, M.D. on August 21, 2009 for left leg pain. (R. 419.) Dr. Wagner gave plaintiff an epidural injection at the L2-3 level. (R. 419-420.) Reports from all of these services were before Dr. Rossi and provided clear bases for his ultimate opinions about plaintiff's maladies and their functional effects.

Having found that the Law Judge's assessment of the record in reaching his conclusions about Dr. Rossi's evidence was flawed, it is RECOMMENDED that an Order enter GRANTING

the plaintiff's motion for summary judgment and REMANDING this case to the Commissioner for further proceedings under Sentence Four of 42 U.S.C. § 405(g).[5]

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

3/5/12
Date

---

[5] Upon remand, the Commissioner would be wise to consider the evidence offered by plaintiff on administrative appeal, as well as any other that may be submitted upon remand. If the decision ultimately is adverse to plaintiff, the Commissioner should determine the weight he has given that evidence in order for there to be a meaningful assessment on judicial review.

6